MINNIE F. COHEN, PETITIONER-RESPONDENT, v. MAX KAFER, RESPONDENT-PROSECUTOR.

Submitted January 19, 1943—Decided May 12, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PORTER.

For the petitioner-respondent, *Parsons, Labrecque & Borden* (*Edmund J. Canzona,* of counsel).

For the respondent-prosecutor, *Howard Eastwood.*

The opinion of the court was delivered by

PORTER, J. This is a workmen's compensation case. The Bureau dismissed the petition, and on appeal to the Ocean County Court of Common Pleas there was a reversal. The writ of *certiorari* brings before us for review that determination.

Petitioner-respondent (hereinafter called petitioner) is the widow of Morris Cohen, deceased, who was employed by Max Kafer, respondent-prosecutor (hereinafter called prosecutor), as driver of a delivery truck. Cohen was delivering bundles of garments for the prosecutor in Lakewood on the evening of July 29th, 1938. He lived in Freehold and, after having had his dinner that evening, had a last delivery to make that day at Lakewood. He took with him a friend who helped him unload the truck when they arrived at their destination. While Cohen was carrying a large bundle up the stairs, he fell. He suffered pain and was unable to continue with his work until he had rested for a while, and then only with the help of his companion. In driving the truck back to Freehold after the accident, he did so under difficulties, driving very slowly and expectorating considerably on the way. Whether or not it was blood that he expectorated, his companion was unable to say. Upon reaching home about midnight Cohen was suffering abdominal pains and was restless, which condition continued for the next two days. On the morning of the second day he vomited a quantity of clotted blood. He then consulted a physician who examined him and received a history from him which included a statement that while carrying the bundle up the stairs, he felt something

give in his stomach, felt weak and fell. He found the abdomen distended and tender. His diagnosis was that Cohen had a gastric hemorrhage probably due to a duodenal ulcer. He advised hospitalization, and Cohen went to a hospital that evening. While there Cohen improved until August 16th when he suffered from acute abdominal pains and had symptoms of shock. A surgeon was called into consultation, and the diagnosis was that a perforation had occurred. An operation was performed on that day and another one on the following day, shortly after which he died. When the operation was performed, the diagnosis was confirmed.

We think that there can be no doubt that the deceased suffered an accidental strain in the course of his employment, which strain caused an injury resulting from the employment under the stated circumstances. The exact nature of the injury and whether the ensuing death was the causal result were questions of fact clearly raised by the proofs and must be determined therefrom. The law is settled that an accidental strain of a part of the body, even though such part was previously weakened by disease, may be compensable under the statute when, as here, the accident arose out of and in the course of the employment. *Bernstein Furniture Co.* v. *Kelly,* 114 *N. J. L.* 500; *affirmed,* 115 *Id.* 500; *Hentz* v. *Janssen Dairy Corp.,* 122 *Id.* 494; *Geltman* v. *Reliable Linen and Supply Co.,* 128 *Id.* 443.

The Bureau in weighing the evidence concluded that the petitioner had failed to sustain the burden of proof. Judge Camp of the Pleas on the contrary, however, found after a careful review of the evidence as follows: "(A) That Morris Cohen, whose widow is the petitioner in this case, suffered an accident on July 29th, 1938, while in the employ of Max Kafer, respondent herein. (B) That said accident had a causal relationship to the death of said Morris Cohen. (C) That said accident was the competent producing cause of the perforation of an ulcer in the body of Morris Cohen and consequently of the subsequent death of said Morris Cohen. (D) That petitioner should recover in accordance with her claim petition as the statute in such case made and provided." We conclude that the testimony fully sustains the conclusions

thus reached, and our independent examination of the proofs leads us to the same fact determination.

The case turns upon the testimony given by the five physicians who testified. Two of them were the attending physician and surgeon who had performed the operation. The other three, two of whom testified for the prosecutor, gave their opinions in answer to hypothetical questions. The testimony of the various doctors, as is not uncommon, was not in accord. The operation, of course, revealed the conditions that existed at that time. Whether or not there had been a perforation at the time of the accident, and if so to what extent, or whether the perforation occurred later as a result of the accident are susceptible of different views and conclusions arrived at from the symptoms and conditions found upon operation. That the man was suffering from this disease and probably had been for some time seems quite clear, whether he was aware of it or not. It also seems clear that something happened to this ulcerated condition of his body which caused the fall. There is no testimony whatever of any intervening condition between July 29th and August 17th, most of which time he was under treatment in the hospital; and it seems to us that there was a causal relationship between the accident and the death. The judgment under review will be affirmed.